UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TIMOTHY J. STEVENS,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:16-cv-977
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's application for supplemental security income (SSI). This matter is before the Court on

plaintiff's Statement of Errors (Doc. 13), the Commissioner's response in opposition (Doc. 14),

and plaintiff's reply memorandum (Doc. 15).

## I. Procedural Background

Plaintiff protectively filed an application for SSI on February 5, 2013, alleging disability

since July 5, 2000, due to a back injury and diabetes.[1] (Tr. 136). Plaintiff's application was

denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted

a *de novo* hearing before administrative law judge (ALJ) Barry Robinson, which was held via

video conference. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ

hearing. On March 16, 2015, the ALJ issued a decision denying plaintiff's SSI application.

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ

the final administrative decision of the Commissioner.

---

[1] The alleged disability onset date was later amended to February 13, 2013. (Tr. 34).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform

the relevant previous employment, the burden shifts to the Commissioner to show that the

claimant can perform other substantial gainful employment and that such employment exists in

the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1. The [plaintiff] has not engaged in substantial gainful activity since February 5, 2013, the application date (20 CFR 416.971 *et seq.*).

2. The [plaintiff] has the following severe impairments: obesity with related diabetes mellitus, hypertension, and degenerative disc disease of his lumbar spine (20 CFR 416.920(c)).

3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, [the ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: the [plaintiff] can never climb ladders, ropes, and scaffolds; he should avoid concentrated exposure to hazardous machinery and unprotected heights.

5. The [plaintiff] has no past relevant work (20 CFR 416.965).

6. The [plaintiff] was born [in] . . . 1963 and was 49 years old (9 days short of his 50th [b]irthday), which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 416.968).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[2]

10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since February 5, 2013, the date the application was filed (20 CFR 416.920(g)).

(Tr. 16-22).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as garment folder (1,525,000 jobs available nationally), photocopy machine operator (850,000 jobs available nationally), and ironer (domestic worker) (1,450,000 jobs available nationally). (Tr. 22).

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

Plaintiff alleges three assignments of error: (1) the ALJ erred when he afforded great weight to the assessment of the non-examining state agency physician, Dr. Syd Foster, D.O.; (2) the ALJ erred in making the credibility determination; and (3) the ALJ erred by failing to address all of the medical opinions/evidence of record. (Doc. 13).

### 1. Weight to the state agency physician's opinion

Plaintiff alleges that the ALJ erred by assigning the most weight to the opinion of the non-examining state agency physician, Dr. Foster, without giving any indication that he considered that Dr. Foster's opinion was not based on a review of the complete case record. (Doc. 13 at 2-3, citing *Blakley*, 581 F.3d at 409). Plaintiff alleges that Dr. Foster did not review medical evidence from Aurora Medical Center Two Rivers Clinic for the period April 30, 2014 to June 26, 2014 (*Id.* at 2, citing Tr. 289-406); Nurse Practitioner Barbara Faber's assessment dated August 11, 2014 (*Id.*, citing Tr. 407-10); and hospital records from Aurora BayCare Medical Center dated August 13-14, 2014 (*Id.*, citing Tr. 411-22). The Commissioner argues that the ALJ committed no error in this regard because he took into account the evidence that post-dated Dr. Foster's opinion and incorporated into the RFC greater restrictions than those

assessed by Dr. Foster based on that evidence. (Doc. 14 at 2-4, citing Tr. 14-21; *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (quoting SSR 96-6p, 1996 WL 374180, *2 (1996)); *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009)). The Commissioner also argues that the medical records that Dr. Foster did not consider were not material to the ALJ's disability determination because they pertained to medical impairments and procedures that did not impose additional functional limitations, including prostate cancer which the ALJ noted was in remission (Tr. 17, 411-22), and a colonoscopy and umbilical hernia repair surgery (Tr. 389-406). (*Id.* at 4-5). Plaintiff argues in his reply that the ALJ had a duty to consider evidence related to an umbilical hernia, which caused symptoms for two months, and prostate cancer surgery and address how those conditions and the two surgeries he underwent in a two-month period to treat them limited his ability to work. (Doc. 15 at 1-2).

Under the treating physician rule, an ALJ must give "controlling" weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record . . . ." 20 C.F.R § 416.927(c)(2). The opinion of a non-treating medical source is weighed based on the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(3)-(6). When warranted, the opinions of agency medical and psychological consultants "may be entitled to greater weight than the opinions of treating or examining sources." *Gayheart*, 710 F.3d at 379-80 (citing SSR 96-6p, 1996 WL 374180, at *3). *See also Wisecup v. Astrue,* No. 3:10-cv-325, 2011 WL 3353870, at *7 (S.D. Ohio July 15, 2011) (Ovington, M.J.) (Report and

Recommendation), *adopted*, 2011 WL 3360042 (S.D. Ohio Aug. 3, 2011) ("opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight"). The opinions of reviewing sources "can be given weight only insofar as they are supported by evidence in the case record." *Helm*, 405 F. App'x at 1002 (citing SSR 96-6p, 1996 WL 374180, *2) (1996). However, "[t]here is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record" in order for the opinion of the non-treating source's opinion to be entitled to greater weight than the opinion of a treating source." *Id*. at 1002. The Sixth Circuit has explained:

> There will always be a gap between the time the agency experts review the record . . . and the time the hearing decision is issued. Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand.

*Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009). Before an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give "some indication" that he "at least considered" that the source did not review the entire record. . . . In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (construing *Blakley,* 581 F.3d at 409). Because a non-examining source has no examining or treating relationship with the claimant, the weight given the source's opinion depends on the degree to which the source provides supporting explanations for his opinion and the degree to which his opinion considers all of the pertinent evidence in the record, including the medical opinions of treating and other examining sources. 20 C.F.R. § 416.927(c)(3).

Under the regulations and rulings applicable to plaintiff's claim, only "acceptable medical sources" as defined under former 20 C.F.R. § 416.913(a)[3] can provide evidence which establishes the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight. *See* SSR 06-03p, 2006 WL 2329939, *2.[4] A nurse practitioner is not an "acceptable medical source" as defined under the applicable Social Security rules and regulations but instead falls under the category of "other source." *Id.*, *1-2; former 20 C.F.R. § 416.913(a). Although information from "other sources" cannot establish the existence of a medically determinable impairment, the information "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, *2; former 20 C.F.R. § 416.913(d). Opinions from medical sources who are not "acceptable medical sources," such as nurse practitioners, should be evaluated on key issues such as the claimant's symptoms, diagnosis, prognosis, and restrictions, and what the individual can still do despite the impairments. SSR 06-03p, 2006 WL 2329939, *5. Factors for weighing the opinions of medical sources who are not "acceptable medical sources" include the nature and length of the treatment relationship, the consistency of the opinion with other evidence, the degree to which

---

[3] Former § 416.913 was in effect until March 27, 2017, and therefore applies to plaintiff's claim filed in 2013. For claims filed on or after March 27, 2017, all medical sources, not just acceptable medical sources, can make evidence that the Social Security Administration categorizes and considers as medical opinions. 82 FR 15263-01, 2017 WL 1105348 (March 27, 2017).

[4] SSR 06-3p has been rescinded in keeping with amendments to the regulations that apply to claims filed on or after March 27, 2017, and the rescission is effective for claims filed on or after that date. 82 FR 15263-01, 2017 WL 1105348 (March 27, 2017). Because plaintiff's claim was filed before the effective date of the rescission, SSR 06-3p applies here.

the source presents relevant evidence to support her opinion, how well the source explains the opinion, the source's specialty or area of expertise, and any other factors that tend to support or refute the opinion. *Id.*, *4-5. *See also Cruse v. Comm'r of Social Sec.*, 502 F.3d 532, 541 (6th Cir. 2007).

In this case, there are two medical opinions on plaintiff's limitations and ability to perform work-related activities. One is from Dr. Foster, the non-examining state agency reviewing physician. The other is from nurse practitioner Barbara Faber, who treated plaintiff at the Aurora Two Rivers Clinic.

Dr. Foster reviewed the medical evidence of record on November 4, 2013. This included May 22, 2013 MRI results showing mild multi-level degenerative disc disease and mild foraminal stenosis at L5-S1, and evidence from Aurora Medical Center Two Rivers Clinic and BayCare Clinic that predated Dr. Foster's assessment. (Tr. 59-67). Dr. Foster reported that the plaintiff has a history of hypertension, type 2 diabetes mellitus, and hypercholesterolemia, all of which were maintained fairly well on medication. (Tr. 65). He also reported a history of low back pain with spasm noted in the past. (*Id.*). Dr. Foster reported that plaintiff was independent in his personal care and activities of daily living, and plaintiff's complaints of pain appeared out of proportion with the totality of the evidence. At the time of his assessment, there was no medical opinion evidence in the record. (Tr. 66). Dr. Foster assessed no exertional limitations, but he restricted plaintiff to never climbing ladders/ropes/scaffolds and to avoiding concentrated exposure to machinery, heights, and other hazards. (Tr. 65).

Nurse practitioner Faber completed a "medical source statement" on August 11, 2014. (Tr. 407-410). She began treating plaintiff on October 8, 2012, reviewed his medications

9

monthly, and saw him every three to six months. (Tr. 407). She diagnosed him with chronic

back pain and lumbar spondylosis with bilateral lower extremity radiculitis. His symptoms

included pain in both legs, which plaintiff rated as constant and 5/10 on the analog pain scale but

increasing to 9/10 at times; pain across his low back with bending; and gait changes ("right leg is

longer."). (*Id.*). Ms. Faber noted that plaintiff's pain was worse with bending, he experienced

leg weakness and some leg numbness after walking four to five blocks, and his low back pain

radiated to both legs "posterior to calf [occasionally] to patellar bilaterally." (*Id.*). An MRI

performed on May 22, 2013 disclosed mild facet arthropathy and questionable L5 spondylosis on

the right side, multilevel degenerative changes, and mild bilateral neural foraminal stenosis at

L5-S1. Ms. Faber reported that Tramadol was not helping plaintiff, and he took Percocet in the

morning and at night. Ms. Faber assessed plaintiff as able to walk 4-5 blocks without rest or

severe pain; sit 20 minutes before needing to get up, stand 20 minutes before needing to sit down

or walk around, sit a total of less than 2 hours in an 8-hour work day, and stand a total of less

than 2 hours in an 8-hour work day. (Tr. 408). She opined that plaintiff would need a job that

permitted him to shift positions at will from sitting, standing or walking and he would need to

walk every 20 minutes for 20 minutes at a time and take unscheduled 20-minute breaks every

hour during a work day. Ms. Faber assessed plaintiff as rarely able to lift 10 pounds,

crouch/squat and climb stairs and never able to twist/stoop/climb ladders. (Tr. 409). Ms. Faber

also opined that plaintiff has "significant limitations with reaching, handling or fingering," such

as limited bilateral overhead reaching only 5% of an 8-hour workday. (Tr. 409). Ms. Faber

opined that plaintiff's symptoms were severe enough to interfere with attention and

concentration needed to perform even simple work tasks 20% of the work day; he was capable of

low stress work; and he was likely to be absent from work more than four days each month as a result of his impairments or treatment. (Tr. 410).

The ALJ gave "great weight" to the medical opinion of state agency reviewing physician Dr. Foster. (Tr. 21). The ALJ found that Dr. Foster's assessment was supported by the medical evidence of record and plaintiff's testimony regarding his daily activities (Tr. 21); however, the ALJ also found that further restricting plaintiff to light work was warranted. (Tr. 19). In arguing that the ALJ erred by crediting Dr. Foster's assessment, plaintiff cites evidence that post-dates Dr. Foster's decision, including Ms. Faber's August 11, 2014 assessment (Tr. 407-410); records from Aurora Medical Center Two Rivers Clinic for the period April 30, 2014 to June 26, 2014 (Tr. 389-406)[5]; and Aurora BayCare Medical Center hospitalization records dated August 13 to 14, 2014 (Tr. 411-422). Plaintiff contends that because Dr. Foster did not review the complete medical file, the ALJ erred by crediting his assessment.

The evidence plaintiff cites does not indicate that he had additional severe impairments or functional limitations that Dr. Foster did not take into consideration and that the ALJ failed to factor into his decision. Plaintiff correctly notes that Dr. Foster did not have Ms. Faber's functional capacity assessment before him. However, the ALJ thoroughly considered Ms. Faber's assessment and his decision to give her opinion "little weight" is substantially supported by the record. (Tr. 20). The ALJ reasonably discounted Ms. Faber's opinion of "excessive and extreme" limitations on the ground it was not substantially supported by any objective clinical or diagnostic findings. Although Ms. Faber assessed extreme sitting, standing and walking limitations, the only objective clinical findings and signs she identified were "mild" MRI

---

[5] Plaintiff cites Tr. 289-406, which is an apparent typographical error. The records he references begin on Tr. 389.

findings from May 2013. (Tr. 407). The ALJ reasonably determined that these mild findings do not support the functional restrictions she imposed. Indeed, both Dr. Foster and Ms. Faber relied on the same "mild" May 2013 MRI findings and both assessed very different limitations on plaintiff's functional abilities. Where, as here, the ALJ is faced with conflicting medical opinions, it is the ALJ's duty to resolve that conflict. *Kalmbach v. Commissioner of Social Sec.,* 409 F. App'x 852, 859 (6th Cir. 2011). The ALJ fully explained why he rejected the more extreme limitations assessed by Ms. Faber and gave great weight to Dr. Foster's opinion and those reasons are supported by substantial evidence as discussed below.[6]

The ALJ noted that because Ms. Faber is not an "acceptable medical source," the ALJ was not required to give her opinion any special deference. (Tr. 21). *See* SSR 06-03p, 2006 WL 2329939, *2. Likewise, the ALJ reasonably determined there was no objective evidence to support the extreme restrictions Ms. Faber assessed on plaintiff's upper extremity functioning. (Tr. 20). Ms. Faber did not identify any examination findings or other test results to support problems with plaintiff's upper extremities. Nor are there any objective examination findings or test results elsewhere in the medical evidence that support bilateral upper extremity restrictions. In addition, the ALJ reasonably determined that although plaintiff suffered from some degenerative disc disease of the lumbar spine or lumbar spondylosis and plaintiff's initial physical therapy evaluation in July 2013 yielded some positive objective findings, the objective evidence did not support the extreme limitations Ms. Faber assessed; rather, those limitations appeared to be based on plaintiff's subjective allegations. (Tr. 19, citing Tr. 216, 218-19). Thus, the ALJ's decision to give "little weight" to Ms. Faber's opinion is substantially supported by the

_____

[6] As noted in the ALJ's hearing decision, even plaintiff's representative conceded that the objective medical

12

record, and the ALJ did not err by crediting Dr. Foster's assessment simply because the reviewing physician did not have Ms. Faber's more recent opinion before him.

Plaintiff also cites clinic and hospital records generated after Dr. Foster's assessment to show the ALJ erred by relying on Dr. Foster's opinion, but those records do not relate to impairments that plaintiff has shown are "severe." *See* 20 C.F.R. §§ 416.920(a)(1)(iii), 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). The records pertain to a colonoscopy on April 30, 2014 (Tr. 389-400), evaluation/repair of an umbilical hernia on June 25, 2014 (Tr. 400-06), and a prostatectomy performed on August 13, 2014. (Tr. 411-22). The records provide no indication that these conditions were "severe" in that they were expected to impact plaintiff's ability to perform basic work activities for a continuous period of at least 12 months. Further, the records are not consistent with plaintiff's complaints of debilitating back pain and other symptoms and restrictions. When seen for the colonoscopy in April 2014, it was reported that plaintiff had full range of motion and strength in the bilateral upper and lower extremities, and he was in no acute distress. (Tr. 392-93). The June 2014 records pertaining to a hernia repair do not include a back condition or symptoms among plaintiff's other medical diagnoses and conditions. (Tr. 400-06). The August 2014 prostate surgery records include chronic pain/back pain under plaintiff's past medical history, but the records also report findings on examination of no acute distress, no spinal tenderness, and no costovertebral angle tenderness.[7] (Tr. 411-22).

---

evidence of record does not support the level of extreme limitations set forth by Ms. Faber. (Tr. 20, 47).
[7] The "costovertebral angle" is the angle formed on either side of the vertebral column between the last rib and the lumbar vertebrae. https://medical-dictionary.thefreedictionary.com/costovertebral+angle.

The ALJ did not err by crediting Dr. Foster's assessment despite the fact that Dr. Foster did not have a complete record before him. The ALJ subjected Dr. Foster's opinion to scrutiny, considered evidence related to plaintiff's severe impairments that post-dated Dr. Foster's review, and imposed additional restrictions limiting plaintiff to a reduced range of light work. Plaintiff's first assignment of error should be overruled.

## 2. The ALJ's credibility finding

Title 20 C.F.R. § 416.929 and Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996)[8] describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c), SSR 96-7p. "[A]n

---

[8] Effective March 28, 2016, SSR 96-7p has been superseded by SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms." *See* 2016 WL 1237954 (clarifying the effective date of SSR 16-3p). There is no indication in the text of SSR 16-3p that the SSA intended to apply SSR 16-3p retroactively, and the Ruling therefore does not apply here. *See Watts v. Comm'r of Soc. Sec.*, No. 1:16-cv-319, 2017 WL 430733, at *10 (S.D. Ohio Jan. 31, 2017) (Report and Recommendation) (Litkovitz, M.J.), *adopted*, 2017 WL 680538 (S.D. Ohio Feb. 21, 2017) (Barrett, J.); *Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.*

Although the ability to do household chores is not direct evidence of an ability to do gainful work, *see* 20 C.F.R. § 404.1572, "[a]n ALJ may . . . consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (citing *Walters*, 127 F.3d at 532); *Blacha v. Sec. of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("[A]n ALJ may consider household and social activities in evaluating complaints of disabling pain.")). *See also Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 174 n.12 (6th Cir. 2016) ("While the applicable regulations state that '[g]enerally, we do not consider activities like taking care of yourself, household tasks, hobbies,' etc. to be 'substantial gainful activity,' 20 C.F.R. § 404.1572(c), the regulations do not prohibit the ALJ from assessing such activities in determining the claimant's credibility regarding pain and other limitations.").

Plaintiff alleges that the ALJ erred by discounting his credibility based on his ability to watch television, play on his computer, and talk on the phone. (Doc. 13 at 3). Plaintiff contends these activities are not the same activities required to perform sustained full-time employment. (*Id.*). The Court agrees that the ability to perform these activities is not tantamount to the ability to engage in full-time employment. The Court also agrees with the Commissioner that the ALJ did not equate plaintiff's ability to perform these activities with the ability to engage in full-time

15

work. (Doc. 14 at 6). This aspect of the ALJ's credibility finding is nonetheless troubling. The ALJ noted that according to plaintiff, he had no difficulty with personal care; he could prepare simple meals; he could go shopping; he spent most of the day lying of the couch, watching television, and playing on his computer; and he talked to his friend on a daily basis. (Tr. 19-20, citing Tr. 164-67). The ALJ found that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment" and that plaintiff's ability to participate in such activities diminished his credibility. (Tr. 20). The ALJ did not explain which of these activities he considered essential to obtaining and maintaining employment and how plaintiff's ability to perform these activities reflected adversely on his credibility. Certainly lying on the couch most of the day, watching television, playing on the computer and talking to a friend on the phone do not require the same physical and mental abilities and social interactions as does working full-time. Had the ALJ simply equated plaintiff's ability to lie on the couch, watch television and play on his computer with the ability to perform sustained full-time employment as plaintiff alleges, the ALJ's credibility finding would not be entitled to deference.

In fact, though, the ALJ considered a number of relevant factors in addition to plaintiff's daily activities in assessing plaintiff's credibility, including: (1) the lack of objective evidence and examination findings to support the extreme restrictions alleged by plaintiff and the functional limitations assessed based on his subjective complaints; (2) the fact that plaintiff had traveled from Wisconsin (where he was living at the time) to Cincinnati for vacation in July 2013, which suggested he may have overstated his symptoms and limitations (Tr. 216- physical therapist at initial evaluation gave plaintiff "home exercise program and ideas for low back

support while sitting in a car" in anticipation of his vacation); (3) plaintiff's criminal conviction

for fraud, a crime of moral turpitude which reflected unfavorably on plaintiff's credibility; and

(4) plaintiff's poor work history, which was sporadic prior to the alleged disability onset date,

included no work at all since 2000, and consisted of no earnings at the substantial gainful activity

level (Tr. 130), thus calling into question whether plaintiff's continuing unemployment was due

to his medical impairments. (Tr. 19-20). These are valid reasons for discounting plaintiff's

credibility, and they are supported by the evidence of record. *See Murpy v. Colvin*, No. 2:13-cv-

730, 2015 WL 964602, *8 (S.D. Ohio Mar. 4, 2015) (deferring to the ALJ's credibility finding

where the ALJ did not rely solely on the plaintiff's activities of daily living but also took into

account several additional credibility factors, including the plaintiff's past criminal history).

Deference to the ALJ's credibility finding is therefore warranted.

Plaintiff's second assignment of error should be overruled.

### 3. The ALJ's alleged failure to address all medical opinions in the record

Plaintiff alleges as his third assignment of error that the ALJ failed "to address all

medical opinions of record." (Doc. 13 at 3). Plaintiff argues in support of this assignment of

error that the ALJ did not consider or address medical evidence in the record documenting

"bilateral lower extremity radiculitis/radicular pain/radicular symptoms"; medical evidence of

diabetic retinopathy and macular edema, which plaintiff alleges causes blurriness and interferes

with his activities of daily living; and evidence of diabetic peripheral neuropathy in the form of

bilateral hand and finger numbness and bilateral feet tingling and numbness. (*Id*. at 3-4; Doc. 15

at 3-5). Plaintiff alleges that the ALJ violated SSR 96-8p by failing to take these impairments

into account and "explore[] whether those impairments/conditions limit [his] ability to engage in work related activity." (Doc. 15 at 5).

The Commissioner alleges in response that the ALJ considered the symptoms and impairments that plaintiff references. (Doc. 14 at 6-8, citing Tr. 17-19). The Commissioner argues that plaintiff has not carried his burden to show that those impairments and symptoms cause greater functional limitations than those the ALJ assessed.

The records the ALJ allegedly failed to consider do not constitute "medical opinions," which the governing regulations define as "assertions involving judgments about a patient's 'symptoms, diagnosis and prognosis'." *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007) (quoting former 20 C.F.R. § 404.1527(a)(2)); *Rivera ex rel. H.R. v. Comm'r of Social Sec.*, No. 3:11-cv-163, 2012 WL 3562023, at * 4 (S.D. Ohio Aug. 17, 2012) (Report and Recommendation), *adopted*, 2012 WL 3871944 (S.D. Ohio Sept. 6, 2012) (a doctor's observations do not qualify as medical opinions under the regulations). This does not mean, though, that the ALJ was not required to consider treatment records and other evidence that was not in the form of a medical opinion. The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 416.945(a)(3). *See also Moore v. Astrue*, No. CIV.A. 07-204, 2008 WL 2051019, at *5-6 (E.D. Ky. May 12, 2008) (the ALJ is responsible for assessing the claimant's RFC by examining all the evidence in the record) (citing 20 C.F.R. §§ 416.945(a)(3), 416.946(c)); *Bingaman v. Comm'r of Soc. Sec.,* 186 F. App'x 642, 647 (6th Cir. 2006)). The ALJ can fulfill his obligation "without directly addressing in his written decision every piece of evidence submitted by a party" and need not "make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a

whole show that he implicitly resolved such conflicts." *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) (citations and internal quotation marks omitted)).

Plaintiff alleges the ALJ erred by failing to address records from April through September 2013 relating to radicular pain and symptoms for which he received epidural steroid injections in August and September 2013. Although the ALJ did not discuss this evidence in his written decision, these records do not contain objective evidence or examination findings that conflict with the ALJ's finding that plaintiff retained the RFC for a reduced range of light work.

No objective findings documenting plaintiff's complaints were made when he was seen at BayCare Clinic in April 2013. (Tr. 376). The records report that plaintiff was in no acute distress, his gait was stable, and he was prescribed Neurontin for numbness and tingling and advised to resume all physical activities and avoid bedrest. (*Id.*). On physical examination in May 2013, a left straight leg raise test was positive and there was tenderness to palpation in the lumbar spine, but plaintiff was in no acute distress, his gait was stable, bilateral lower extremity muscle strength was intact, and sensation was intact. (Tr. 374). Plaintiff reported that Neurontin had not worked and caused side effects and he requested pain medication, but the doctor declined his request and ordered that plaintiff first get a lumbar MRI. (*Id.*). The May 2013 MRI of the lumbar spine disclosed only mild degenerative changes and mild bilateral neural foraminal stenosis at L5-S1. (Tr. 294-95). In June 2013, several pain tests were positive, including the FABERE test, the Ober's test[9], the piriformis stretch test, and rotation, flexion and extension

_____

[9] The Ober's test is used to evaluate a tight, contracted, or inflamed iliotibial tract; the patient lies on the uninvolved side and the involved hip is abducted by the examiner as the knee is flexed to 90 degrees; the hip is allowed to

tests, and palpation indicated tenderness over the lumbar paraspinous musculature. (Tr. 370-372). There were "left-sided straight leg radicular signs on examination." (Tr. 371). A treatment plan was formulated for physical therapy with injection therapy to be considered if needed and Percocet was prescribed to be taken once daily as needed. Plaintiff was instructed to avoid bedrest and maintain his normal activities. (*Id.*). When plaintiff was seen on August 9, 2013, he was in no acute distress. (Tr. 368). Plaintiff reported he did his home exercises twice daily, he could walk farther, and he slept better at night but still had pain. Strength was 5/5 on testing. A modified straight leg raise test was positive on the left for pain past the knee and negative on the right but notable for posterior thigh pain. Forward flexion caused some increased pain and some paresthesia into the posterior legs down to the calf. The plan was to continue with physical therapy and to schedule epidural steroid injections to address the bilateral radiculopathy. Plaintiff was advised to avoid bedrest and resume his regular activities. (*Id.*). Plaintiff received epidural steroid injections in August and September 2013 based on his complaints of low back pain with bilateral extremity pain into his feet and diagnoses of multi-level degenerative joint disease and bilateral lower extremity radiculitis. (Tr. 226-28, 232-34, 381-84, 385-88). On September 3, 2013, plaintiff reported his current pain was 8-9/10, and he complained of pain continuing to radiate to the posterior legs and occasionally down to the left leg. (Tr. 366). However, he was in no acute distress and he reportedly sat in the exam room chair with "mild discomfort." A modified straight leg raise was negative bilaterally but notable for pain. Plaintiff was advised to avoid bedrest and resume regular activities, and he was informed no new Percocet prescription would be written after the current one. (*Id.*). On

---

adduct passively; the degree of abduction or the production of pain along the iliotibial tract can assist in identifying

September 27, 2013, plaintiff reported his pain was 8-9/10 in the low back with radiation down the posterior legs to the ankles and he requested a refill of the Percocet, which was denied. (Tr. 361). A modified straight leg raise test was positive for pain down the posterior leg just distal to the knee at about 80 degrees extension and negative on the left. Plaintiff was in no acute distress, and he was advised to avoid bedrest and resume his regular activities. (*Id.*).

These records do not contain relevant objective findings that the ALJ failed to take into account or show there are conflicts in the record that the ALJ failed to resolve. The records span the period April 2013 to September 2013 and show that plaintiff was diagnosed with lumbar spine spondylosis and bilateral radiculitis (Tr. 368), but the records include very few positive objective findings. While the records include some positive findings related to plaintiff's back impairment, primarily on pain testing, they consistently document that plaintiff was in no acute distress, there were no findings of instability or weakness, and plaintiff was regularly advised to avoid bedrest and resume his regular activities following examination. The ALJ did not err by failing to discuss in his decision evidence of "bilateral lower extremity radiculitis/radicular pain/radicular symptoms" and to account for these symptoms in fashioning the RFC for a reduced range of light work.

Plaintiff also contends that the ALJ also erred by failing to consider evidence related to his diabetic retinopathy and macular edema, which he alleges cause blurriness. (Doc. 13 at 4, citing Tr. 423, 432). The ALJ considered plaintiff's diabetes mellitus and related allegations. (Tr. 18). The ALJ found that although plaintiff alleged significant problems with his diabetes and blood sugar and he suffered from some retinal neuropathy, medical evidence from February

---

the location of the inflammation or contracture.  https://medical-dictionary.thefreedictionary.com/Ober+test.

2014 documented that his blood sugar "was holding steady at 177." (*Id.*, citing Tr. 423).

Records from June 2013 likewise indicate that plaintiff's blood glucose levels were well-controlled at that point. (Tr. 370). Although plaintiff reported some worsening of his vision with blurriness in February 2014, on examination his retinopathy and macular edema were found to be "mild." (Tr. 423-24). In September 2014, no evidence of diabetic retinopathy or progression of glaucoma was found on examination, but there was some progression of a right cataract. (Tr. 432). Plaintiff has not pointed to evidence that shows his diabetic retinopathy and macular edema imposed functional limitations in addition to those assessed by the ALJ. The ALJ did not err by failing to further consider plaintiff's visual impairments and to account for them in the RFC finding.

Finally, plaintiff alleges the ALJ erred by failing to consider the impact of his diabetic peripheral neuropathy on his ability to work. (Doc. 13 at 4, citing Tr. 38). Plaintiff contends the records from Dr. Xinqian Chen, M.D., at BayCare Clinic show that he complained of numbness and tingling in all extremities in April 2013 and May 2013. (*Id.* at 4-5, citing Tr. 374-75). The ALJ acknowledged that plaintiff suffered from some peripheral neuropathy which was likely related to his diabetes. (Tr. 18). The ALJ imposed restrictions against climbing ladders/ropes/scaffolds and concentrated exposure to hazardous machinery and unprotected heights to account for the possibility of lightheadedness and dizziness associated with plaintiff's diabetes and hypertension. (Tr. 18-19). The ALJ did not assess additional functional limitations to account for plaintiff's peripheral neuropathy. However, plaintiff has not pointed to any evidence that shows his peripheral neuropathy imposes restrictions beyond those assessed by the ALJ. The ALJ did not err by failing to consider plaintiff's peripheral neuropathy.

The ALJ considered the medical evidence and the other evidence of record and found that plaintiff retained the RFC to perform a reduced range of light work. The records discussed above do not contain objective evidence or examination findings that conflict with the ALJ's finding and show he erred in rendering his RFC finding. Plaintiff's third assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT**:

The decision of the Commissioner be **AFFIRMED** and this matter be **CLOSED** on the docket of the Court.

Date: 12/1/17

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TIMOTHY J. STEVENS,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:16-cv-977
Barrett, J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.  This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).